### Application of Burton B. SANDIFORD.

### Patent Appeal No. 7628.

United States Court of Customs
and Patent Appeals.
April 14, 1966.

Sol Shappirio, Washington, D. C., Robert E. Strauss, Anaheim, Cal., for appellant.

Joseph Schimmel, Washington, D. C. (L. F. Parker, Washington, D. C., of counsel), for the Commissioner of Patents.

Before RICH, Acting Chief Judge, and MARTIN, SMITH, and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.*

ALMOND, Judge.

Burton B. Sandiford appeals from the decision of the Board of Appeals affirming the rejection of method claims 1 to 6, inclusive, of appellant's application,[1] entitled "Water Flooding," as unpatentable over the prior art under 35 U.S.C. § 103. No claims have been allowed.

The claimed invention relates to an improvement in the viscous water flooding method for displacing oil from a subterranean oil-bearing reservoir in the

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Chief Judge Worley*, pursuant to provisions of Section 294(d), Title 28, United States Code.

1. Serial No. 32,550 filed May 31, 1960.

process of secondary petroleum recovery. It appears that reliance cannot be had on natural forces and pumping to induce the residual oil to the withdrawal well but resort must be had to other means to accomplish this desired end. A conventional method is to inject water or brine into the reservoir to force the oil contained therein towards a production well. This method, it seems, does not obviate the difficulty which is experienced in bringing about a complete areal sweep of the water which has a natural inclination to penetrate directly toward the withdrawal well in a narrow channel. It was found expedient, therefore, to increase the viscosity of the water or brine by adding certain materials thereto designed to reduce the tendency of the water to channel in the reservoir and thereby improve the displacement process and the ultimate recovery of the oil. The claims on appeal cover the use of, allegedly, a new additive for this purpose, namely, hydroxyethyl cellulose (HEC), as well as a new modification of the method of using it.

In addition to the viscous nature of HEC in aqueous solutions, the application states that it exhibits other characteristics which make it valuable in reservoir flood waters. Among these are: (1) inertness to sands and nonadsorption thereon; (2) does not cause plugging of sands; (3) relative stability in oil field substances containing detrimental chemical reacting agents; (4) stability under turbulence and agitation, and (5) a beneficial viscosity-shear relationship, namely, "high viscosities under low shear rates such as are encountered at the oil-water interface in a flooding process, and * * * lower viscosities under high shear rates * * * at the injection sites."

Claim 1 is reproduced as representative:

    1. In the method of recovering oil from a subterranean oil bearing reservoir wherein an aqueous fluid is injected into said reservoir through at least one injection well and displaced oil is withdrawn from said reservoir through at least one production well spaced therefrom, the improvement which comprises employing as said aqueous fluid a viscous aqueous solution of hydroxyethyl cellulose having a viscosity at 75° F. between about 10 and 1000 centipoises.

The references are:

| | | |
|---|---|---|
| Binder et al. (Binder) | 2,731,414 | Jan. 17, 1956 |
| Cardwell et al. (Cardwell) | 2,778,427 | Jan. 22, 1957 |
| Sandiford et al. (Sandford) | 2,827,964 | Mar. 25, 1958 |
| Park | 2,961,400 | Nov. 22, 1960 |

Binder discloses the basic concept of using viscosity increasing agents as thickeners for the same purpose disclosed by appellant. The agent is added to a portion of the flood water and the resulting solution (having a volume of about 0.05 to 0.3 times the pore volume of the reservoir to be flooded) is injected into the reservoir, and thereafter the unthickened, relatively nonviscous flood water is injected into the well whereby the oil in the formation is displaced by the viscous aqueous solution which in turn is displaced by the unthickened water.

Binder does not mention HEC as such. Among the thickening agents disclosed is carboxy methyl cellulose (CMC), 1 to 2 percent of which will serve to increase viscosity to about 1000 centipoises. The amount of viscous solution used should be about 0.05 to 0.30 of the volume of hydrocarbon pore space in the reservoir.

Cardwell relates to a method of acidizing an earth formation penetrated by the bore of the well to increase the output of oil and gas therefrom. The patent teaches the use of water-soluble cellulose ethers as viscosity increasing agents for dilute aqueous solutions used in oil well acidization and fracturing. Cellulose ethers disclosed for this purpose are, inter alia, CMC and HEC. The patentee states that by including in the hydrochloric acid solution the cellulose ethers in a stated percentage range by weight, they "at least temporarily thicken or increase the viscosity of the acid solution and deposit a water absorbent gel-like film or coating on the surface of the earth formation to be acidized."

Sandiford relates to the use of thickening agents in water flooding processes. It is disclosed that brines are conventionally used as the aqueous flooding medium in such processes and the use of a surface active agent is also a conventional practice.

Park discloses the use of water-soluble cellulose ethers and esters for controlling clay swelling in water flooding and other well treating processes. This patent also teaches the use of brine as the flooding medium in a water flooding process. According to Park, swelling of the silicates in the reservoir can be inhibited by the addition of slight amounts (less than 0.1 weight percent) of a cellulose derivative to the water. Fourteen such derivatives are disclosed including both HEC and CMC. Relative to these derivatives as viscosity increasing agents for water, the patentee states that the operability of his process "is independent of the viscosity grade of the cellulose derivative employed. So long as the viscosity is not so great that the cellulose cannot be dispersed in the treating liquid, it may be used in the invention."

The examiner rejected the claims as "lacking invention" over Binder in view of the Cardwell and Park patents. He pointed out that Binder disclosed the basic concept of utilizing viscosity increasing agents in water flooding processes, for which purpose CMC is specifically disclosed. He further noted that both Cardwell and Park teach the similarity and equivalence of HEC and CMC and that these cellulosic ether derivatives are viscosity increasing agents, concluding that it would be an obvious expedient to one skilled in the art with the teachings of these references before him to substitute HEC for the CMC thickener in water flooding processes such as disclosed by Binder. With reference to the limitation in claim 3 reciting "oil field brine" as the flooding medium, the examiner regarded such use of this substance as a conventional practice in the art as taught by both Sandiford and Park. As to claim 6 which broadly calls for "a surface active agent," included in the flooding medium, the examiner observed that this is a common practice in the art as shown by Sandiford.

In its affirmance of the examiner's decision, the board stated:

We agree with the Examiner that the secondary references would suggest the use of hydroxyethyl cellulose in place of the carboxymethyl cellulose employed in the process of Binder et al. * * *

It is apparent that both the method claimed by appellant and that disclosed by Binder relate directly to improved secondary methods of recovering oil from a subterreanean reservoir. Both employ the steps of injecting a viscous aqueous cellulosic solution (appellant about 10 to 1000 centipoises, Binder 100 to 1000 centipoises) into the oil bearing reservoir through injection wells until about .001 to 0.30 (Binder .05 to 0.30) times the pore volume to be flooded is injected.

It may be said, therefore, that appealed claims 1 and 2 distinguish over Binder only in that they call for the use of HEC instead of CMC as an aqueous solution viscous additive. We think that the record amply sustains the holdings below that this difference would be obvious from the prior art. Cardwell teaches the use of HEC and CMC to increase the viscosity of the acid solution employed in his secondary oil recovery technique. Park, which relates to the control of swelling of silicates in secondary oil recovery, discloses the use of CMC and HEC as viscosity increasing agents for water. Park refers to the High Polymers Text,[2] which reads:

Sodium carboxymethyl cellulose thickens water solutions without precipitation over a pH range of 4 to 12 and does not gel from water solutions upon heating. It is not precipitated from solution by dilute solutions of salts of

2. 2nd Edition, Vol. V, Part II, by Ott, Spurlin and Grafflin (1954), published by Interscience Publishers Inc., New York, N.Y.

alkali or alkaline earth metals; it is precipitated from solution by strong acids, by salts of amphoteric multivalent metals, and by salts of heavy metals.

Under the caption "Hydroxyethyl Cellulose," it is further stated:

The use of hydroxymethyl cellulose result[s] from its solubility in cold and hot water, its salt and solvent compatability, and its effectiveness as a protective colloid. Hydroxyethyl cellulose thickens solutions over a wide range of pH without precipitation.

It seems apparent therefore that those skilled in the subject art were fully apprised that both HEC and CMC could be used as solution thickeners over a wide range of pH values without precipitation.

Of equal obviousness is the use of brine (claim 3) as an aqueous liquid in water flooding, taught by Park. The same conclusion follows that a surface active agent (claim 6) as an additive to an aqueous solution could be used, as taught by Cardwell.

Appellant asserts discovery of the unexpected superiority of HEC for water flooding by reason of its stability in oil field brines. The solicitor counters, effectively we think, that the art knew that solutions of HEC, being nonionic, were generally more stable in the presence of salts and acids than those utilizing CMC, the latter being an anionic thickener.

With regard to the use of HEC, the main thrust of appellant's argument is that although HEC and CMC are chemical derivatives of cellulose, they are not obvious equivalents as viscous additives in water flooding because of chemical differences which make HEC a superior additive. Appellant seeks to support these contentions by reliance upon several tests and affidavits purporting to establish lack of equivalency between the two derivatives and the superiority of HEC over CMC.

The examiner pointed out that an affidavit in order to prove inoperativeness of a patented invention must make a strong and conclusive showing and deemed the limited showing made by appellant insufficient to establish that CMC, claimed as being useful in water flooding in Binder, is inoperative for this purpose. The record supports the observation of the solicitor that the core used by appellant was saturated with brine prior to the introduction of the oil, a condition not called for by the claims. There is no test establishing that sand cores not so saturated would be plugged when flooded by a viscous aqueous solution of CMC. The disclosures of the prior art clearly indicate that they would not be.

We have heretofore noted the prior art's recognition of the nonionic nature of solutions of HEC and their superior characteristic of stability in the presence of salts and acids over CMC. This, we think, would clearly suggest to one skilled in the art to use HEC in place of CMC in a core such as used by appellant in his tests.

■ Claims 4 and 5 specify that one or more thickened HEC solutions having successively decreasing viscosities are injected after the injection of the first thickened HEC solution. The purpose of this gradual viscosity decrease is stated in the specification:

To avoid any sharp demarcations in viscosity which could adversely affect the relative mobilities and cause channelling, the addition of hydroxyethyl cellulose can gradually be lessened through a series of incremental decreases rather than discontinuing the addition abruptly. In this manner, water present in the flooded interval is always adjacent water of approximately equal viscosity and the tendency of the less viscous water to channel into through [sic] more viscous water is substantially eliminated. * * *

With regard to the above limitation in claims 4 and 5, the examiner remarked:

If this gradual lowering of viscosity were considered to be an advantage, it would be obvious to one skilled in the art to gradually lessen the quantity of the HEC in this manner. Appellant

has not shown that there is in fact any actual advantage in following the flood-front with aqueous media of gradually reduced viscosity (as set forth in claims 4 and 5) as opposed to the follow-up with flood water containing no thickener as shown by Binder et al. Appellant has not even alleged that the particular procedure of claims 4 and 5 produces any unobvious advantages.

We cannot agree with the examiner. First, we believe the rejection is based upon faulty reasoning. The prior art neither teaches nor suggests gradually decreasing the viscosity of the following liquid. Binder merely discloses following the initial viscous injection with unthickened water. Any suggestion for the gradual decrease must have originated with appellant's specification, not the prior art. It is, of course, improper to utilize appellant's own teachings to reject claims under the guise of 35 U.S.C. § 103. Second, appellant does disclose an advantage to be gained by the gradual decrease—the inhibition or elimination of channeling. We see no reason to doubt this allegation.

For the reasons above stated, we *affirm* the board's decision as to claims 1–3, and 6, and *reverse* the board's decision as to claims 4 and 5.

Modified.